# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN BRINICH-BARNES, Administrator of the Estate of Garland Barnes, | Case No. 1:24-cv-01414-KES-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATION THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED WITHOUT LEAVE TO AMEND** |
| v. | (Doc. 9) |
| PHH MORTGAGE CORPORATION, as successor via merger with Ocwen Loan Servicing, LLC, | **OBJECTIONS DUE: 21 DAYS** |
| Defendant. | |

## I.   INTRODUCTION

On February 18, 2025, Defendant PHH Mortgage Corporation ("Defendant"), as successor by merger to Ocwen Loan Servicing, LLC ("Ocwen"), filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 9.)  On April 4, 2025, Plaintiff Helen Brinich-Barnes ("Plaintiff"), Administrator of the Estate of Garland Barnes, proceeding *pro se*, filed an opposition to the motion. [1]  (Doc. 20.)  Defendant filed a reply on April 14, 2025.  (Doc. 22.)

On February 19, 2025, the motion was referred to the undersigned for findings and recommendation pursuant to 28 U.S.C. § 636(b) (Doc. 13), and a hearing was re-set for April 23, 2025 (Doc. 14).  On April 16, 2025, the undersigned reviewed the briefs and supporting material, found the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing.  (Doc. 24.)

For the reasons set forth below, the undersigned RECOMMENDS that Defendant's motion to dismiss be GRANTED without leave to amend.

---

[1] In its reply brief, Defendant notes that Plaintiff's opposition was filed one day late and urges the Court to disregard the untimely filing.  (*See* Doc. 22 at 2–3.) In the absence of any apparent prejudice, which Defendant has not shown, the Court shall permit the late filing.  Plaintiff is cautioned that any future failures to comply with this Court's deadlines will be looked upon with disfavor.

## II.    BACKGROUND[2]

### A.    The Mortgage Loan

In 2007, Garland Barnes ("Barnes") purchased property located at 117 E. 21st Street, Merced, California, for $640,000 with a mortgage loan of $512,000 secured by a promissory note.  (Doc. 6 ¶ 8.)  In March 2015, Barnes "plead[ed] with Ocwen to refinance his loan due to his terminal illness and congestive heart failure," but it "refused to evaluate loss mitigation options."  (*Id*. ¶ 9.)  Barnes passed away in April 2015, and Plaintiff, his daughter, was appointed administrator of his estate (the "Estate").  (*Id*. ¶¶ 10–11.)  As such, Plaintiff inherited the property and the financial obligations on behalf of the Estate.  (*Id*. ¶ 10.)

In August 2015 and June 2016, Ocwen issued statements "showing unapplied funds" and "unresolved discrepancies" on Barnes' mortgage account.  (Doc. 6 ¶¶ 12–13.)  According to Plaintiff, payments made were "not properly allocated, leading to unjust penalties", "procedural delays", and "additional financial strain on the [E]state."  (*Id*.)  Plaintiff entered into a contract with a construction contractor in April 2017 "for extensive property repairs totaling $59,500," which she alleges "reflect[ed] her efforts to maintain and restore the property despite Ocwen's refusal to assist."  (*Id*. ¶ 14.)

### B.    Plaintiff Communicates with Ocwen Regarding the Loan

In August 2017, Ocwen sent a letter to the Estate requesting an appraisal or purchase contract for a loan payoff quote, noting the loan's status under the Shared Appreciation Modification ("SAM") Program.  (Doc. 6 ¶ 15.)  According to Plaintiff, Ocwen "fail[ed] to provide clear guidelines or timely action under SAM Program rules, constituting procedural discrepancies."  (*Id*.)  That next month, Ocwen provided a mortgage transfer packet to Plaintiff that "outlin[ed] necessary documentation and proof of insurance."  (*Id*. ¶ 16.)

The property was listed for sale at $450,000 in January 2018 but was "removed after three days due to unresolved issues related to Ocwen's procedural failures."  (Doc. 6 ¶ 17.)  In April 2018, Ocwen cancelled a property valuation "without sufficient justification, showcasing

---

[2] The following facts are drawn from Plaintiff's First Amended Complaint (Doc. 6), which is the operative pleading. All well-pleaded factual allegations—as opposed to legal conclusions—are assumed to be true for purposes of Defendant's motion to dismiss.  *See Robinson v. Salazar,* 838 F. Supp. 2d 1006, 1014–15 (E.D. Cal. 2012).

1  procedural inconsistencies and its failure to meet obligations." (*Id.* ¶ 18.) In May 2018,

2  Altisource, an appraisal company hired by Ocwen, assessed the property at $400,000,

3  "significantly below the initial purchase price." (*Id.* ¶ 19.)

4         Plaintiff spoke with Ocwen via telephone in July 2018 regarding foreclosure processes,

5  where Ocwen "admitted to withdrawing appraisal requests and mishandling short sale options."

6  (Doc. 6 ¶ 20.) During this phone call, Ocwen informed Plaintiff that the "foreclosure process is

7  'on hold,'" but, according to Plaintiff, "Ocwen's internal records reveal that the foreclosure

8  auction is still being prepared." (*Id.* ¶ 21.)

9         On August 1, 2018, Ocwen "cancel[ed] an appraisal order without notifying" Plaintiff,

10  which Plaintiff asserts "impact[ed] her efforts to pursue a short sale" and "disrupt[ed] her

11  attempts to mitigate foreclosure, as no alternative options [were] provided." (Doc. 6 ¶ 22.)

12  Plaintiff contacted Ocwen on August 3, 2018, to "request clarification on the canceled

13  appraisal." (*Id.* ¶ 23.) Plaintiff asserts "Ocwen representatives failed to provide a consistent

14  explanation, stating that the appraisal was unnecessary but failing to escalate the issue for

15  resolution." (*Id.*)

16         Ocwen sent a letter to Plaintiff dated August 6, 2018, "acknowledging her recent contact

17  and providing steps to apply for mortgage assistance, including options such as lump-sum

18  payment plans, loan modifications, and deeds-in-lieu of foreclosure." (Doc. 6 ¶ 24.) Plaintiff

19  contends that the communication came "after foreclosure preparation had already advanced,

20  rendering these options moot." (*Id.*)

21  **C.**      **The Property is Sold at Auction**

22         On August 22, 2018, the property was sold at auction for $243,843.65, the amount of the

23  unpaid debt, which Plaintiff alleges "disregard[ed] over $600,000 in equity contributed by []

24  Barnes." (Doc. 6 ¶ 25.) Plaintiff filed a complaint with Ocwen's Office of the Consumer

25  Ombudsman stating that the Ocwen's representatives "had assured her that the foreclosure was

26  on hold as they made arrangements for [Plaintiff] and another family member to assume the

27  loan." (*Id.* ¶ 26.) Ocwen responded to Plaintiff's complaint via email in December 2018, which

28  Plaintiff contends "acknowledge[ed] procedural errors, including the erroneous cancellation of

appraisals, mismanagement of short sale procedures, and failure to provide timely updates during the foreclosure process."  (*Id.* ¶ 27.)

**D.    Plaintiff Files *Ocwen I* in State Court**

In March 2019, Plaintiff, represented by attorney Mike Chappars ("Attorney Chappars"), filed a civil suit against Ocwen in Merced County Superior Court, for "wrongful foreclosure and other violations," styled *Brinich-Barnes v. Ocwen Loan Servicing, LLC*, et al., Case No. 19CV-1168 ("*Ocwen I*").  (Doc. 6 ¶ 28.)  According to Plaintiff, the proceedings in *Ocwen I* were "drastically delayed due COVID-19 and in early 2024 due to Attorney Chappars' heath [*sic*] deterioration."  (*Id.* ¶ 29.)  Plaintiff alleges she was told by Attorney Chappars that Ocwen was "willing to allow [Plaintiff] to submit an offer in order to end litigation."  (*Id.*)  According to Plaintiff, "Despite this false negotiation attempt, Ocwen filed a motion for summary judgment in [*Ocwen I*] in March 2024, to which Attorney Chappars did not file an opposition on behalf of [Plaintiff]."[3]  (*Id.* ¶ 30.)

In July 2024, Attorney Chappars notified Plaintiff of his hospitalization due to epilepsy.  (Doc. 6 ¶ 31.)  Plaintiff asserts that the hospitalization resulted in Attorney Chappars' "inability to file an opposition to the defense's motion for summary judgment" in *Ocwen I*, and that Attorney Chappars informed Plaintiff of his intention to transition her case to another attorney.  (*Id.*)

**E.    Plaintiff Offers to Settle the Dispute**

Plaintiff alleges that she spoke with Ocwen's attorney in October 2024 and informed him that Attorney Chappars "was ill and that she was seeking other counsel and that she was willing to buy the property."  (*Id.* ¶ 32.)  According to Plaintiff, "Ocwen's representative stated that Ocwen would only accept cash for the purchase."  (*Id.*)  That same day, Plaintiff communicated with a mortgage lender "about discussions with Ocwen's attorney and how she was instructed by Ocwen's counsel to submit a written offer."  (*Id.* ¶ 33.)

Plaintiff emailed "a formal settlement offer" to Ocwen's counsel on October 21, 2024,

---

[3] As set forth more fully below, the Court will take judicial notice of certain filings in *Ocwen I,* which, contrary to Plaintiff's allegations, include an opposition to Ocwen's motion for summary judgment that was filed by Attorney Chappars on behalf of Plaintiff on March 4, 2024.  (*See* Doc. 23 at 5–10.)

1  proposing a lump sum payment of $243,843.65 to resolve the dispute.  (*Id*. ¶ 34.)  Plaintiff

2  alleges that Ocwen "fail[ed] to acknowledge this offer and proceed[ed] with actions that

3  disregard[ed] [Plaintiff's] equity rights and list[ed] the property for $699,600."  (*Id*. ¶ 35.)  On

4  November 10, 2024, Ocwen placed the property up for action "despite unresolved legal claims

5  and in disregard to [Plaintiff's] substantial equity interest."  (*Id*. ¶ 36.)

6  **F.      Plaintiff Files the Present Case in This Court**

7  On November 19, 2024, Plaintiff filed the complaint in this case naming as the defendant

8  Ocwen "as succeeded by merger by PHH Mortgage Corporation."  (Doc. 1.)  Plaintiff amended

9  the complaint on January 23, 2025, to name as defendant "PHH Mortgage Corporation as

10  successor via merger with Ocwen." (Doc. 6.)

11  Plaintiff's First Amended Complaint, the operative pleading, seeks relief for Ocwen's

12  "systemic failures in servicing the mortgage loan secured by the property," and asserts claims for

13  violation of the Real Estate Settlement Procedures Act, violation of the Consumer Financial

14  Protection Act, violation of the Truth in Lending Act, violation of California's Homeowners Bill

15  of Rights statutes, and violation of California's Unfair Competition Law.  (*See* Doc. 6.)  Plaintiff

16  seeks "an emergency injunction preventing Ocwen from conducting any sale or auction activities

17  on the [p]roperty during this litigation," damages, and attorney's fees.  (*Id*. at p. 12.)

18  **III.     MOTION TO DISMISS STANDARD**

19  A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a

20  claim, and dismissal is proper if there is a lack of a cognizable legal theory, or the absence of

21  sufficient facts alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d

22  1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted).  In resolving a 12(b)(6)

23  motion, a court's review is generally limited to the operative pleading.  *Daniels-Hall v. National*

24  *Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir.

25  2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006); *Schneider v.*

26  *California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Courts may not supply

27  essential elements not initially pleaded, *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014),

28  and "'conclusory allegations of law and unwarranted inferences are insufficient to defeat a

1 motion to dismiss for failure to state a claim,'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*,

2 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140

3 (9th Cir. 1996)).

4    To survive a motion to dismiss, a complaint must contain sufficient factual matter,

5 accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662,

6 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks

7 omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969

8 (9th Cir. 2009).  The Court must accept the well-pleaded factual allegations as true and draw all

9 reasonable inferences in favor of the non-moving party. *Daniels-Hall*, 629 F.3d at 998; *Sanders*,

10 504 F.3d at 910; *Huynh*, 465 F.3d at 996-97; *Morales v. City of Los Angeles*, 214 F.3d 1151,

11 1153 (9th Cir. 2000).  Further,

> If there are two alternative explanations, one advanced by defendant and the other
> advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a
> motion to dismiss under Rule 12(b)(6).  Plaintiff's complaint may be dismissed
> only when defendant's plausible alternative explanation is so convincing that
> plaintiff's explanation is *im*plausible.  The standard at this stage of the litigation is
> not that plaintiff's explanation must be true or even probable.  The factual
> allegations of the complaint need only "plausibly suggest an entitlement to relief."
> . . . Rule 8(a) "*does not impose a probability requirement at the pleading stage*; it
> simply calls for enough fact to raise a reasonable expectation that discovery will
> reveal evidence" to support the allegations.

18 *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (internal citations omitted) (emphases in

19 original).

20    In practice, "a complaint . . . must contain either direct or inferential allegations respecting

21 all the material elements necessary to sustain recovery under some viable legal theory."

22 *Twombly*, 550 U.S. at 562.  To the extent that the pleadings can be cured by the allegation of

23 additional facts, the plaintiff should be afforded leave to amend.  *Cook, Perkiss and Liehe, Inc. v.*

24 *Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV.    DISCUSSION

26    Defendant contends the claims in this case are barred by *res judicata* based on the

27 litigation of *Ocwen I,* or, alternatively, they are barred by the applicable statutes of limitations.

28 (Doc. 9 at 11–17.)  The undersigned agrees.

6

1    **A.    Requests for Judicial Notice**

2        As an initial matter, Defendant requests the Court take judicial notice of deeds, Trustee's

3    notices, and certain filings and orders from *Ocwen I*.[4]  (*See* Docs. 10, 23.)  In general, "a district

4    court may not consider any material beyond the pleadings, in ruling on a Rule 12(b)(6) motion."

5    *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994).  "A court may, however, consider certain

6    materials—documents attached to the complaint, documents incorporated by reference in the

7    complaint, or matters of judicial notice—without converting the motion to dismiss into a motion

8    for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

9        Under Rule 201 of the Federal Rules of Evidence, a court "may judicially notice a fact that

10    is not subject to reasonable dispute because it: (1) is generally known within the trial court's

11    territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

12    accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The Court may take judicial

13    notice of its own records and the records of other courts.  *See United States v. Howard*, 381 F.3d

14    873, 876 n.1 (9th Cir. 2004); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see also*

15    Fed R. Evid. 201.  It may also take judicial notice of "matters of public record."  *Lee v. City of*

16    *Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

17        The documents at issue are public records, the accuracy of the documents is not questioned

18    by either party[5], and the documents' accuracy is not subject to reasonable dispute.  *See*

19    *Thompson v. Well Fargo Bank, N.A.,* No. 1:17-CV-1200 AWI SKO, 2018 WL 1453212, at *2

20    (E.D. Cal. Mar. 23, 2018).  Accordingly, Defendant's requests for judicial notice are granted and,

21    pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the

22    deeds, Trustee's notices, and certain filings and orders from *Ocwen I*.  (Docs. 10, 23.)  Moreover,

23    because no disputed issues of fact appear, *res judicata* is properly raised in Defendant's motion

24    to dismiss based upon the Court taking judicial notice of the record in *Ocwen I*.  *See Silva v.*

25

26    [4] Plaintiff also requests that the Court take judicial notice of a "new legal action that has been filed against Defendant PHH before this Honorable Court.  *See* Case# 1 25-cv-000457 (E.D. CA, 2025)."  (Doc. 25.)  The Court notes that

27    Plaintiff filed another lawsuit against Defendant in this Court on April 21, 2025, but expresses no opinion on its merits.

28    [5] In fact, one of the documents at issue, the Trustee's Deed Upon Sale, is attached to Plaintiff's First Amended Complaint.  (*See* Doc. 6, Ex. 18.)

*Yosemite Community College District*, 1:19-cv-00795-LJO-EPG, 2019 WL 6878237, at *5 (E.D. Cal. Dec. 17, 2019) ("*Res judicata* may properly be raised in a Rule 12(b)(6) motion to dismiss based upon the court taking judicial notice of the record in the prior case where no disputed issues of fact appear") (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)); *Stokes v. City of Visalia*, No. 1:17-cv-01350-SAB, 2018 WL 2979765, at *5 (E.D. Cal. June 8, 2018) (Although *res judicata* is an affirmative defense, a court may properly dismiss an action as barred by *res judicata* "based upon the facts alleged in the complaint and any facts that are properly subject to judicial notice.") (citation omitted).

**B.    Plaintiff's Claims Are Barred by *Res Judicata***

   **1.    Legal Standard**

   In determining the preclusive effect of a prior state court judgment, federal courts are required to apply the preclusion law of the state in which the judgment was rendered, here California.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012).  *See also Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007).

   Under California law, "[t]he doctrine of *res judicata* precludes the relitigation of certain matters which have been resolved in a prior proceeding under certain circumstances." *Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 556 (1999); *accord Rippon v. Bowen*, 160 Cal. App. 4th 1308, 1318 (2008).  The rule is "is intended to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation." *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 829 (1999); *see also Bernhard v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 19 Cal. 2d 807, 811 (1942) ("The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.  The doctrine also serves to protect persons from being twice vexed for the same cause.").

   The elements of *res judicata* are "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a

1  party or in privity with a party to the prior proceeding." *Boeken v. Philip Morris USA, Inc.*, 48

2  Cal. 4th 788, 797 (2010).

3  **2.    Analysis**

4  a.    Privity Between the Parties

5  The Court begins by discussing the third element of *res judicata* because the parties do not

6  dispute this element.   The same plaintiff sued Ocwen in *Ocwen I* and Defendant in this case.[6]

7  (*Compare* Doc. 6 *with* Doc. 10-6.)  It is undisputed that Defendant is the successor of Ocwen, the

8  defendant in *Ocwen I*.  (*See* Doc. 6 ¶¶ 6, 28.)  Defendant also participated in *Ocwen I*, as it filed

9  a motion for summary judgment (as Ocwen's successor by merger) against Plaintiff.  (*See* Doc.

10  10-7.)  Defendant's participation in *Ocwen I* and its status as Ocwen's successor-in-interest is

11  sufficient to find privity between Ocwen and Defendant for purposes of *res judicata*.  *See Tevra*

12  *Brands, LLC v. Elanco Animal Health Inc.*, No. 24-CV-04683-BLF, 2025 WL 964694, at *7

13  (N.D. Cal. Mar. 31, 2025) (citing *Qwest Corp. v. City of Portland*, 385 F.3d 1236, 1243 n.8 (9th

14  Cir. 2004) (holding the parties in two different actions are the same considering the "status as

15  successor" between parties in the two actions)).

16  b.    Identity of Claims

17  Under this element of the *res judicata* analysis, California law determines whether two

18  causes of action are identical "by analyzing the primary right at stake." *Le Parc Cmty. Ass'n v.*

19  *Workers' Comp. Appeals Bd.*, 110 Cal. App. 4th 1161, 1170 (2003).  For example, if "two

20  actions involve the same injury to the plaintiff and the same wrong by the defendant then the

21  same primary right is at stake even if in the second suit the plaintiff pleads different theories of

22  recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Id*.  "What

23  is critical to the analysis 'is the harm suffered; that the same facts are involved in both suits is not

24  conclusive.'"[7]  *San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568

---

25  [6] As noted above, Plaintiff originally sued Ocwen in this case (*see* Doc. 1), then subsequently amended her complaint
to name Defendant as "successor via merger with Ocwen" (*see* Doc. 6).

26  [7] Defendant contends in their motion that "[t]he central criterion in determining whether there is an identity of claims
between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of

27  facts,'" citing *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000).  (Doc. 9 at 12.)  However, *Frank*, and
the cases on which it relied, applied federal—not California—*res judicata* standards.  Here, because a federal court

28  must apply state law regarding *res judicata* to a prior state court judgment, *Holcombe v. Hosmer*, 477 F.3d 1094, 1097
(9th Cir. 2007), California *res judicata* law controls.

F.3d 725, 734 (9th Cir. 2009) (citing *Agarwal v. Johnson*, 25 Cal. 3d 932 (1979)). "Moreover, California, as most states, recognizes that the doctrine of *res judicata* will bar not only claims actually litigated in a prior proceeding, but also claims that could have been litigated." *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993).

In *Ocwen I*, Plaintiff sought redress for Ocwen's conduct during the foreclosure process and the alleged wrongful foreclosure of the property located at 117 E. 21st Street, Merced, California. (*See* Doc. 10-6.) That is the same harm for which Plaintiff seeks relief in this case. (*See* Doc. 6 ¶ 1 ("This action arises from Ocwen Loan Servicing, LLC's ("Ocwen") systemic failures in servicing the mortgage loan secured by the property located at 117 E 21st Street, Merced, California (the "Property"). Ocwen's misconduct includes wrongful foreclosure, dual tracking, violations of the Real Estate Settlement Procedures Act ("RESP A"), breaches of California Civil Code § 2923.6, and numerous procedural failures that unjustly deprived the Plaintiff of substantial equity and property rights.").) The undersigned therefore concludes that Plaintiff is attempting to file a new action based on the same injury alleged in *Ocwen I*, thereby meeting the "identity of claims" element of *res judicata*.

Plaintiff asserts that *res judicata* does not bar her claims in this case because "[t]he cause of actions differ" and "[n]ew evidence and violations exist." (Doc. 20 at 4.) Plaintiff does not identify the "new evidence and violations" to which she refers. In fact, the factual allegations in *Ocwen I* and this case substantially overlap.[8] (*Compare* Doc. 6 at ¶¶ 18–25 (appraisals of the property and foreclosure sale) *with* Doc. 10-6 ¶¶ 25–36 (same).) But even if there were "new evidence and violations," this does not prevent the application of *res judicata* in this case. *Le Parc Cmty. Ass'n*, 110 Cal. App. 4th at 1170. Further, while some of the claims alleged in this case are the same as in *Ocwen I* and some are not the same, they still ultimately challenge the foreclosure of the property in 2018.[9] As such, they stem from the same primary right at issue in

---

[8] Plaintiff makes other allegations in the First Amended Complaint about her attempts to settle the *Ocwen I* dispute with Defendant's counsel in October 2024 (*see* Doc. 6 ¶¶ 32–35), but these allegations do not form the basis of her claims, all of which concern the foreclosure process and the foreclosure sale that occurred in 2018 (*see id.* ¶¶ 43–70). In fact, these allegations appear to give rise to Plaintiff's newly filed action against Defendant in this Court. (*See* Doc. 25.)

[9] Moreover, because the unique claims alleged in the First Amended Complaint could have been brought in *Ocwen I*, *res judicata* applies. *See Ivanoff v. Bank of America, N.A.*, 9 Cal. App. 5th 719, 727 (2017) (The doctrine of *res*

10

*Ocwen I* and are barred on that basis, so long as the other requirements for r*es judicata* are met. *See Lomeli v. JPMorgan Chase Bank, N.A.*, No. 15-cv-04022, 2015 WL 12746210, at *5 (C.D. Cal. Oct. 5, 2015) ("In California, a wrongful foreclosure constitutes an injury to a single primary right, regardless of the legal theory challenging the foreclosure."); *see also Le v. Bank of America, N.A.*, 585 F. App'x 362 (9th Cir. 2014) ("The district court properly dismissed the action as precluded by the doctrine of *res judicata* (claim preclusion) because Le alleged claims arising out of the same loan transaction and related foreclosure proceedings against the same defendant, or an entity in privity with the current defendants, in two prior federal actions in which there were final judgments on the merits."); *Zinni v. Jackson White, PC*, 565 F. App'x 613, 616–17 (9th Cir. 2014) ("To the extent that Plaintiffs' claims arise out of events flowing from the 2009 default and notice of sale, they are barred by claim preclusion because they arise from the same claim—M & I Bank's attempt to foreclose on Plaintiffs' loan—that was finally adjudicated on the merits by the district court").

c.    Final Judgment on the Merits

The last remaining element of *res judicata* requires that the prior proceeding resulted in a final judgment on the merits.  Here, that element is met: in *Ocwen I*, the defendants' summary judgment motion was granted on March 13, 2024 (Doc. 10-7), judgment was entered in favor of the defendants and against Plaintiff on April 9, 2024 (Doc. 10-8), no appeal from the judgment was taken and the time to do so has expired, *see* Cal. Rule of Court 8.104(a) (requiring judgment to be appealed within 60 to 180 days after entry of judgment).  *See Kay v. City of Ranch Palos Verdes*, 504 F.3d 803, 808 (9th Cir. 2008) (explaining that "the finality required to invoke the preclusive bar of *res judicata* [under California law] is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired."); *see also Franklin & Franklin v. 7–Eleven Owners for Fair Franchising*, 85 Cal. App. 4th 1168, 1174 (2000).

Plaintiff asserts that a "[d]ismissal due to attorney incapacitation does not equate to an adjudication on the merits."  (Doc. 20 at 4.)  Such assertion, however, is belied by the record.

---

*judicata* operates to bar relitigation of a claim "if the cause of action could have been brought, whether or not it was actually asserted or decided in the first lawsuit."; *see also Palomar Mobilehome Park Ass'n*, 989 F.2d at 364.

*Ocwen I* was not dismissed due to "attorney incapacitation." In fact, contrary to the allegations in the First Amended Complaint, Attorney Chappars, Plaintiff's attorney in *Ocwen I*, filed an opposition to the defendant's motion for summary judgment on March 4, 2024 (*see* Doc. 23), and appeared at the hearing on the motion (remotely, via Zoom) on March 13, 2024.

In sum, the undersigned concludes that Plaintiff's claims are barred under the doctrine of *res judicata*. Accordingly, any amendment would be futile and leave to amend is inappropriate. *See Tramell v. Golden 1 Credit Union,* No. CIV S-09-1470 GEB EFB, 2010 WL 3341623, at *4 (E.D. Cal. Aug. 24, 2010) (finding *pro se* plaintiff's claims barred by *res judicata* and dismissing without leave to amend on futility grounds).

## C.    Plaintiff's Claims are Also Time Barred

Defendant alternatively contends that all of Plaintiff's cognizable claims are time barred.[10] "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

Here, each of Plaintiff's claims concerns conduct that occurred between 2015 and 2018.[11] All of Plaintiff's claims, which are statutory in nature, have statutes of limitations that range from 1 to 4 years. *See* 12 U.S.C. § 2614 (Real Estate Settlement Procedures Act ("RESPA") limitations period); 15 U.S.C. § 1640(e) (Truth in Lending Act ("TILA") limitations period); *Toye v. Newrez LLC*, No. 19-CV-02322-BAS-LL, 2020 WL 4569128, at *10 n.5 (S.D. Cal. Aug. 7, 2020) (discussing the limitations period for violations of the California's Homeowner Bill of Rights statutes); *Flores v. Fed. Home Loan Mortg. Corp.*, No. ED-CV-18-1311-JVS (KKx), 2018 WL 6184778, at *3 (C.D. Cal. Sept. 10, 2018) (same); Cal. Bus. & Prof. Code § 17208

---

[10] Defendant asserts that Plaintiff's claim for violation of the Consumer Financial Protection Act (Doc. 6 ¶¶ 47–49) is not cognizable because there is no private right of action under the Act. (Doc. 9 at 13.) The undersigned agrees that such claim is subject to dismissal. *See Goziker v. Wells Fargo Bank, N.A.*, No. 8:23-CV-00860-FWS-DFM, 2023 WL 8872294, at *7 (C.D. Cal. Oct. 17, 2023) (Consumer Financial Protection Act does not create a private right of action) (collecting cases); *Carmichael v. Sacramento Reg'l Transit*, No. 2:16-CV-2476-JAM-EFB PS, 2018 WL 338977, at *3 (E.D. Cal. Jan. 8, 2018) (same).

[11] As noted above, Plaintiff includes facts in the First Amended Complaint that took place in 2024 (*see* Doc. 6 ¶ 32–35), but she does not base her claims on them. (*See id.* ¶¶ 43–70.)

(California Unfair Competition Law limitations period).  Plaintiff filed this lawsuit on November 19, 2024.  (Doc. 1.)  The undersigned agrees with Defendant that Plaintiff's claims are time-barred, which is an independent reason for dismissing Plaintiff's claims.  The undersigned further finds that no amendment of the complaint could resolve that defect.  *See Platt Elec. Supply v. EOFF Elec., Inc*., 522 F.3d 1049, 1060 (9th Cir. 2008) (affirming district court's dismissal of a time-barred claim without leave to amend because "any amendments would have been futile").

Plaintiff does not dispute the limitations periods for her claims.  Instead, she contends that that the periods should be tolled because Defendant "prevent[e]d [her] from discovering the extent of their fraudulent activity."  (Doc. 20 at 3.)  Plaintiff further asserts that the "continuing violations doctrine applies."  (*Id*.)  Both arguments are without merit.  First, Plaintiff does not plead any facts in the First Amended Complaint supporting tolling based on fraudulent concealment, which must be pleaded with particularity.  *See Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006) ([F]raudulent concealment . . . halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.  The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and must plead with particularity the facts which give rise to the claim of fraudulent concealment.) (citations and quotation marks omitted); *see also Tseng v. PeopleConnect, Inc*., 665 F. Supp. 3d 1136, 1149 (N.D. Cal. 2023).  ("Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b).").  In fact, Plaintiff was <u>not</u> prevented by Defendant from filing her lawsuit in a timely manner: she filed an action seeking redress for the same harm—and asserting some of the same claims—against Defendant's predecessor in state court in March 2019 (*Ocwen I*).  *See, e.g., McCloskey v. Carlton Builders*, 165 Cal. App. 3d 689, 693 (1985) ("Not only did appellants have a reasonable suspicion of fraud, which starts the statute of limitations running . . . they ***proved*** in suit 1 that Carlton fraudulently concealed the nature of the soil.  Suit 2 is barred both by the running of the statute of limitations and by *res judicata*.") (emphasis in original).  *Accord Lariscey v. Smith*, 66 F.3d 323 (5th Cir. 1995) ("The circumstances of Lariscey's case, which

1    includes the earlier dismissed RICO suit and the Claims Court decision covering the same

2    operative facts underlying this case, negate any claim that Lariscey has been so diligent as to

3    invoke equitable tolling.").

4        Second, while Plaintiff contends that Defendant's "misapplication of payments, failure to

5    process loss mitigation applications, and dual tracking persisted beyond foreclosure, keeping the

6    claims active and actionable" (Doc. 20 at 3), the First Amended Complaint does not include any

7    such facts supporting a "continuing violation" theory.[12]   Instead, Plaintiff pleads that each of

8    these acts occurred between 2015 and 2018—outside of the limitations period.  (*See* Doc. 6 ¶¶

9    12–13 (misapplication of payments); ¶¶ 9, 15–16, 20, 22, 24, 44 (failure to process loan

10   mitigation applications); ¶ 25 (dual tracking).)

11                                    **V.    RECOMMENDATION**

12       For the reasons set forth above, the undersigned RECOMMENDS that Defendant's motion

13   to dismiss (Doc. 9) be GRANTED without leave to amend.

14       These findings and recommendation are submitted to the district judge assigned to this

15   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  **Within twenty-**

16   **one (21) days of service of this recommendation**, any party may file written objections to these

17   findings and recommendation with the Court and serve a copy on all parties.  Such a document

18   should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The

19   district judge will review the magistrate judge's findings and recommendation pursuant to

20   28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to file objections within the

21   specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

22   838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

23
24   IT IS SO ORDERED.

25   Dated:   **May 5, 2025**                        */s/ Sheila K. Oberto*

26                                              UNITED STATES MAGISTRATE JUDGE

27   ───────────────────────
28   [12] "The continuing violations doctrine is an equitable exception to the timely filing requirement, which allows a plaintiff to plead facts that occurred outside the statute of limitations."  *Miranda v. Hokinson*, No. 2:07-CV-00609-FMC-RCX, 2007 WL 10134467, at *3 (C.D. Cal. Oct. 23, 2007) (internal quotations omitted).